1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SERGIO ROMERO,                              No.  2:24-cv-3143 AC

12                  Plaintiff,

13         v.                                    ORDER

14   TRIBUNE MEDIA COMPANY,

15                  Defendant.

16

17         This case is before the undersigned for all purposes pursuant to the consent of the parties.

18   ECF No. 14.  Defendant moves to dismiss, ECF No. 17, and plaintiff opposes the motion, ECF

19   No. 18.  Defendant replied.  ECF No. 21.  The parties appeared by counsel before the undersigned

20   for a hearing on March 19, 2025.  Having carefully considered all arguments, the motion to

21   dismiss is GRANTED in part and DENIED in part.

22                                    **I. Background**

23         A.    The Complaint

24         The operative First Amended Complaint ("FAC") asserts five causes of action related to

25   the termination of plaintiff's employment.  ECF No. 15.  According to the FAC, plaintiff began

26   his employment with defendant Tribune Media Company on October 31, 2018, as an Account

27   Executive at KTXL FOX40 in Sacramento, California.  Id. at 4.  Plaintiff alleges he was an

28   excellent employee who intended to continue with the company until retirement.  Id.  Plaintiff

                                           1

1   was diagnosed with stomach cancer on June 20, 2023.  Id.  Plaintiff promptly reported this life-

2   threatening diagnosis to defendant.  Id.

3       On August 5, 2023, plaintiff was instructed by his supervisor, National Sales Manager

4   Dan Haas, to begin working from home because COVID-19 was spreading throughout the

5   workplace.  Id. at 8.  Plaintiff immediately began working from home with the understanding that

6   this arrangement was temporary and intended to protect his health.  Id.  Despite the change in

7   work environment, plaintiff continued to fulfill his job responsibilities, including working 40

8   hours per week, without issue or decline in performance.  Id.  Plaintiff remained in regular

9   communication with his advertising clients and ensured his work was completed in a timely and

10  efficient manner, demonstrating his ability to maintain productivity while working remotely.

11      On September 12, 2023, plaintiff began his first cycle of pre-surgery chemotherapy.  Id.

12  Despite the heavy physical toll of his treatment, plaintiff continued to work remotely to ensure

13  defendant did not lose any business income from the advertising contracts he managed.  Id.  "For

14  example, while undergoing five-hour chemotherapy treatments, during which a port in his chest

15  allowed a nurse to administer the chemotherapy, Plaintiff worked from his laptop to promptly

16  respond to client requests for updates and proposals."  Id.  During this entire period, plaintiff

17  remained capable of performing the essential functions and duties of his position with or without

18  a reasonable accommodation.  Id.

19      In response to plaintiff's request, plaintiff's supervisor Dan Haass, as well as third-party

20  administrator UNUM, authorized and approved a continuous unpaid disability leave of absence

21  for plaintiff.  Id. at 9.  Following approval of the leave of absence, plaintiff's oncologist

22  determined additional chemotherapy and radiation were necessary prior to his stomach removal

23  surgery, which was re-scheduled to March 28, 2024.  Id.  On or about January 4, 2024, plaintiff

24  provided defendant, as well as UNUM, a note from plaintiff's oncologist with an estimated return

25  to work date of July 4, 2024.  Id.  Defendant, through UNUM, initially approved this leave

26  period.  Id.  Then, in a letter dated March 1, 2024, plaintiff was notified by defendant and UNUM

27  that his "leave entitlement" under FMLA as well as any applicable state laws and corporate

28  policies was exhausted effective February 28, 2024.  Id.

1    In response to the letter, plaintiff contacted his direct supervisor, Haas, in order to discuss

2    an extension of his unpaid leave of absence.  Id. at 10.  A few days later, on March 4, 2024, Haas

3    sent text messages to plaintiff reading as follows: "I received an extension of your leave from

4    unum but it only went from 2/29 to 3/30.  Obviously that will need to be extended gain.  Do you

5    have an idea of recovery time?  Obviously don't care from A work perspective but more for your

6    sake." Id.  Because Haas communicated the approval of plaintiff's requested extension of his

7    unpaid leave of absence from UNUM, plaintiff understood that Haas, as plaintiff's direct

8    supervisor, was an approved and appropriate mode of communication with defendant Tribune

9    Media Company regarding the length, extension, and approval of his unpaid leave of absence.  Id.

10   At no time was plaintiff directed to communicate with any other representative, agent, or

11   employee of defendant regarding his leave of absence or anticipated return to work date.  Id.

12   On May 21, 2024, plaintiff received a text message from Hass reading as follows: "Hey

13   there! How's the recovery going?"  Id. at 11.  Referring to his anticipated post-surgery

14   chemotherapy, plaintiff replied, "I have a scan on 5/30 to identify the remaining cancer cells then

15   they will start in June.  I believe if everything goes well I will be done with treatment by August

16   or September." Id.  Haas replied, "Ok you got this!"  Id.  Plaintiff followed up, "They have to do

17   a scan after Chemo to see if everything has been wiped out at least what they know about."  Id.

18   Haas replied, "Got it.  Ok good thoughts."  Id.  Based on this exchange as well as plaintiff's prior

19   phone calls and texts with Haas, plaintiff understood that Hass and defendant continued to

20   authorize and approve Plaintiff's ongoing unpaid disability leave of absence.

21   On June 14, 2024, without any prior warning, interactive process, or notice, plaintiff

22   received an email from defendant's Human Resources Representative Sandra Mansfield that

23   included a letter from General Manager Cathy Gunther, dated June 12, 2024, informing plaintiff

24   that his employment with defendant would be terminated effective July 1, 2024.  Id. at 12.  The

25   only reason provided for plaintiff's termination was "failure to return from leave as of July 1,

26   2024." Id.  Plaintiff alleges he was completely shocked and bewildered by the summary

27   termination of his employment for multiple reasons.  First, the "failure to return to work" date

28   was more than two weeks in the future.  Second, plaintiff understood and believed that defendant

3

1    and its third-party administrator UNUM had already expressly authorized and approved his

2    unpaid leave of absence from work due to his medical condition and temporary disability based

3    on his communications with Haas, and because the Company had never made any objection to the

4    duration of his unpaid leave of absence or his estimated return to work date.  Id.  Further, plaintiff

5    alleges he remained capable of performing the essential functions of his job duties with or without

6    a reasonable accommodation through his employment with defendant, even through his unpaid

7    leave of absence, up to and including the date defendant terminated plaintiff's employment.

8         Based on these facts, plaintiff asserts five causes of action against defendant: (1) wrongful

9    termination in violation of public policy; (2) disability and medical condition discrimination in

10   violation of California's Fair Employment and Housing Act ("FEHA"); (3) failure to

11   accommodate disability in violation of FEHA; (4) failure to engage in the interactive process in

12   violation of FEHA; and (5) retaliation in violation of FEHA.  ECF No. 15 at 13-20.  Plaintiff

13   seeks damages for emotional distress, general, presumed, and special damages, compensatory

14   damages, an award of punitive and/or exemplary damages, costs and fees, and prejudgment

15   interest.  Id. at 22.  This case is in federal court pursuant to 28 U.S.C. §1332(a)(1).

16        B.  Motion to Dismiss

17        Defendant moves to dismiss all claims for failure to state a claim upon which relief can be

18   granted pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 17-1 at 6.  Defendant also moves to strike

19   plaintiff's request for exemplary and punitive damages.  Id. at 7.

20                              **II.  Analysis**

21        A.  Legal Standard Governing Motions to Dismiss

22        "The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

23   sufficiency of the complaint."  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

24   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

25   sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't., 901

26   F.2d 696, 699 (9th Cir. 1990).

27        In order to survive dismissal for failure to state a claim, a complaint must contain more

28   than a "formulaic recitation of the elements of a cause of action;" it must contain factual

4

1    allegations sufficient to "raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v.</u>

2    <u>Twombly</u>, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of

3    facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of

4    action.  <u>Id.</u> (quoting 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1216, pp. 235-35

5    (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to

6    'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)

7    (quoting <u>Twombly</u>, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

8    factual content that allows the court to draw the reasonable inference that the defendant is liable

9    for the misconduct alleged."  <u>Id.</u>

10            In reviewing a complaint under this standard, the court "must accept as true all of the

11   factual allegations contained in the complaint," construe those allegations in the light most

12   favorable to the plaintiff and resolve all doubts in the plaintiff's favor.  <u>See</u> <u>Erickson v. Pardus</u>,

13   551 U.S. 89, 94 (2007); <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954,

14   960 (9th Cir. 2010), <u>cert. denied</u>, 564 U.S. 1037 (2011); <u>Hebbe v. Pliler</u>, 627 F.3d 338, 340 (9th

15   Cir. 2010).  However, the court need not accept as true legal conclusions cast in the form of

16   factual allegations, or allegations that contradict matters properly subject to judicial notice.  <u>See</u>

17   <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981); <u>Sprewell v. Golden State</u>

18   <u>Warriors</u>, 266 F.3d 979, 988 (9th Cir.), <u>as amended</u>, 275 F.3d 1187 (2001).

19            B.  <u>Disability and Medical Discrimination under FEHA</u>

20            The Fair Employment and Housing Act protects employees from discrimination, including

21   discrimination based on a medical condition, so long as that person can perform the essential

22   duties of the job with or without reasonable accommodations.  Cal. Gov't Code § 12940(a).  To

23   state a claim for disability discrimination under FEHA, a plaintiff must allege that: (1) he suffers

24   from a disability; (2) he is otherwise qualified to do his job; and (3) he was subjected to an

25   adverse employment action because of his disability.  <u>Alejandro v. ST Micro Elecs., Inc</u>, 129 F.

26   Supp. 3d 898, 907 (N.D. Cal. 2015) (citing <u>Brundage v. Hahn</u>, 57 Cal.App.4th 228, 236 (1997));

27   <u>Humphrey v. Memorial Hospitals Ass'n</u>, 239 F.3d 1128, 1133 (9th Cir. 2001).

28   ////

1    Plaintiff has alleged all the required elements of a FEHA medical discrimination claim.

2    Plaintiff alleges he suffered from the medical disability of stomach cancer.  ECF No. 15 at 6.  The

3    definition of physical disability under FEHA includes "[h]aving any physiological disease,

4    disorder, condition, cosmetic disfigurement, or anatomical loss" that affects one of several body

5    systems and limits a major life activity."  Cal. Gov. Code § 12926(m).  Plaintiff's stomach cancer

6    unquestionably fits this definition.  Plaintiff alleges he was otherwise qualified to do his job.  ECF

7    No. 15 at 6 ("Despite this required medical treatment and the leave of absence from work that

8    would be required as a reasonable accommodation, Plaintiff SERGIO ROMERO remained

9    capable of performing the essential functions and duties of the Account Executive Position with

10   or without a reasonable accommodation.").  Finally, plaintiff alleges he suffered an adverse

11   employment action (termination) because of his disability: he was terminated before he had the

12   opportunity to return from his unpaid leave of absence.  ECF No. 15 at 12-13.

13   Defendant argues that plaintiff "fails to allege facts that establish he could perform the

14   essential job duties with or without a reasonable accommodation and cannot demonstrate an

15   adverse employment action was taken by Defendant *because* of a disability or perceived

16   disability."  ECF No. 17-1 at 13 (emphasis original).  Defendant argues that the FAC

17   demonstrates "a flaw in [plaintiff's] pleaded facts for what they believed was approved leave."

18   Id. at 12.  The court disagrees.  The necessary "causal connection or nexus can be proved by

19   establishing facts that create an inference of discrimination . . . or by a showing of actual bias

20   against complainant's group, or by other competent evidence."  Ibarbia v. Regents of Univ. of

21   California, 191 Cal. App. 3d 1318, 1328 (Ct. App. 1987).  The complaint adequately supports an

22   inference of a causal connection between plaintiff's medical disability and the adverse action of

23   his termination: plaintiff alleges that defendant was aware of his medical condition, and he was

24   terminated while on medical leave, before his return to work date, on the sole asserted ground of

25   failure to return to work.  These alleged circumstances support an inference that the "failure to

26   return to work" rationale was not the actual reason for termination, leaving discrimination as the

27   most likely motivation.  Whether plaintiff's understanding regarding his medical leave was

28   accurate is a question of disputed fact that is not appropriate for consideration on a motion to

1     dismiss.  Defendant's motion to dismiss is DENEID as to this claim.

2           C.   <u>Failure to Accommodate under FEHA</u>

3          FEHA makes it unlawful "for an employer ... to fail to make reasonable accommodation

4     for the known physical ... disability of an applicant or employee."  Cal. Gov't Code § 12940(m).

5     "The elements of a prima facie claim for failure to make reasonable accommodation claim are:

6     (1) the plaintiff has a disability covered by FEHA; (2) the plaintiff is qualified to perform the

7     essential functions of the position; and (3) the employer failed to reasonably accommodate the

8     plaintiff's disability."  <u>Achal v. Gate Gourmet, Inc.</u>, 114 F. Supp. 3d 781, 798–99 (N.D. Cal.

9     2015) (citing <u>Scotch v. Art Inst. of Cal. Orange County, Inc.</u>, 173 Cal.App.4th 986, 1010 (2009)).

10    "Reasonable accommodation means a modification or adjustment to the workplace that enables a

11    disabled employee to perform the essential functions of the job held or desired."  <u>Id.</u> (internal

12    citations omitted); <u>see also</u> Cal. Gov't Code § 12926(p).  Whether an accommodation is

13    reasonable is generally a question of fact.  <u>Hanson v. Lucky Stores, Inc.</u>, 74 Cal. App. 4th 215,

14    228 n. 11 (1999).  Unlike a discrimination claim, a failure to accommodate claim under FEHA

15    does not require the plaintiff to demonstrate an adverse employment action, nor is there any

16    required showing of a causal nexus between the disability and an adverse employment action.

17    <u>Jensen v. Wells Fargo Bank</u>, 85 Cal.App.4th 245, 255–56 (2000).

18         Defendant argues that plaintiff "does not plead any facts supporting he was qualified to

19    perform the essential functions of the position or that Defendant failed to reasonably

20    accommodate his alleged disability.  Plaintiff also fails to identify what reasonable

21    accommodation he requested which allegedly was denied."  ECF No. 17-1 at 14.  These

22    assertions are belied by the FAC, which repeatedly allege that plaintiff was capable of performing

23    the essential functions of his position with the reasonable accommodation of a time-limited

24    unpaid leave of absence, or even without it.  ECF No. 15 at 4:9, 6:20, 7:21, 8:12, 9:4, 11:8, 13:1.

25    Plaintiff clearly identifies that he requested a reasonable accommodation "in the form of an

26    unpaid leave of absence from work."  <u>Id.</u> at 11.  Plaintiff is clear that he believed, based on

27    communications with Haas, that he was receiving the unpaid leave of absence through August or

28    September of 2024.  <u>Id.</u>  Defendant again makes arguments as to disputed issues of fact, such as

1    whether plaintiff knew or should have known that Haas could not approve his leave.  ECF No.

2    17-1 at 13-14.  On a motion to dismiss, the facts of the complaint are assumed to be true and are

3    not subject to dispute.  It is clear from plaintiff's FAC that the pleading standard is satisfied.  The

4    motion is DENIED as to this claim.

5              D.  <u>Failure to Engage in the Interactive Process in Violation of FEHA</u>

6           Government Code section 12940, subdivision (n), provides that it shall be unlawful for an

7    employer "to fail to engage in a timely, good faith, interactive process with the employee ... to

8    determine effective reasonable accommodations, if any, in response to a request for reasonable

9    accommodation by an employee ... with a known physical or mental disability or known medical

10   condition."  To state a cause of action for failure to engage in the interactive process, a plaintiff

11   must allege facts establishing both (1) that the employer had a duty to engage in the interactive

12   process, and (2) that the employer failed to provide any reasonable accommodation.  <u>Scotch v.</u>

13   <u>The Art Inst. Of California-Orange County</u>, 173 Cal. App. 4th 986, 1003 (2000) (citing <u>Wilson v.</u>

14   <u>County of Orange</u>, 169 Cal. App. 4th 1185, 1193 (2009)).  "The employee must initiate the

15   process unless the disability and resulting limitations are obvious."  <u>Id.</u>

16          Defendant argues that plaintiff fails to adequately plead this claim because it "voluntarily

17   provided opportunities for Plaintiff to demonstrate he was fit to return to work and began

18   engagement with Plaintiff on all occasions of contact" but plaintiff did not attempt to engage with

19   defendant, even after receiving the notice from UNUM that his leave was exhausted.  ECF No.

20   17-1 at 15.  The court agrees with plaintiff, however, that for the proposes of a motion to dismiss,

21   the pleading is sufficient.  Plaintiff alleges facts in support of each element: (1) he alleges he

22   developed stomach cancer, a disability; (2) he alleges he informed defendant of his disability and

23   communicated with his direct supervisor about his disability; and (3) he alleges that his

24   communications with his supervisor led him to believe his leave of absence was approved, and

25   that defendant made no effort to communicate to plaintiff that his leave was ending prior to his

26   termination.  These allegations are sufficient to state a claim, and to the extent there are disputed

27   questions of fact, they are not at issue on a motion to dismiss.  The motion to dismiss is DENIED

28   as to this claim.

1        E.    <u>Retaliation in Violation of FEHA</u>

2        California Government Code §12940(h) makes it an unlawful employment practice "[f]or

3    any employer ... to discharge, expel, or otherwise discriminate against any person because the

4    person has opposed any practices forbidden under this part or because the person has filed a

5    complaint, testified, or assisted in any proceeding under this part."  To establish a claim for

6    retaliation, the plaintiff has the initial burden to show that (1) that he engaged in a protected

7    activity, (2) he was subjected to an adverse employment action, and (3) that there was a causal

8    link between the protected activity and the adverse action.  <u>Kelley v. Corr. Corp. of Am.</u>, 750 F.

9    Supp. 2d 1132, 1143 (E.D. Cal. 2010).  Defendant argues that plaintiff fails to establish a causal

10   link between plaintiff engaging in a protected activity and defendant subjecting him to an adverse

11   employment action.  ECF No. 17-1 at 16.  Plaintiff contends that the link is established because

12   he requested a leave of absence to undergo stomach removal surgery, then requested an extension

13   of that absence, and he was terminated because he needed and requested the leave of absence.

14   ECF No. 18 at 15.

15       The case law supports defendant's position.  In <u>Kelley</u>, <u>supra</u>, a District Court evaluated a

16   similar argument and considered whether a request for a leave of absence as an accommodation

17   leading to an employee's termination could support a retaliation claim.  750 F. at 1143.  The court

18   concluded it could not.  The court explained, "While the range of protected activities is wide for

19   purposes of Subdivision (h), there is no case the court can find to support the proposition that a

20   mere request for accommodation is a protected activity.  In every case the court has reviewed,

21   'protected activity' for purposes of Subdivision (h) involves some level of opposition to the

22   employer's actions based on the employee's reasonable belief that some act or practice of the

23   employer is unlawful."  <u>Id.</u> at 1143-44.  In other words, a FEHA retaliation claim must begin with

24   some sort of opposition to an employer's discriminatory or violative action on the part of the

25   plaintiff followed by an adverse action by the employer.  Otherwise, as the <u>Kelley</u> court pointed

26   out, a retaliation claim would "significantly blur and perhaps obliterate the distinction between an

27   action for failure to accommodate or engage in the interactive process and retaliation."  <u>Id.</u> at

28   1144.

9

1    The undersigned finds the reasoning of <u>Kelley</u> to be persuasive.  Because plaintiff does

2    not allege the necessary elements of a retaliation claim under FEHA, defendant's motion to

3    dismiss is GRANTED as to this claim.

4        F.    <u>Wrongful Termination in Violation of Public Policy</u>

5        Pursuant to California common law, "when an employer's discharge of an employee

6    violates fundamental principles of public policy, the discharged employee may maintain a tort

7    action and recover damages traditionally available in such actions."  <u>Tameny v. Atl. Richfield</u>

8    <u>Co.</u>, 27 Cal.3d 167, 170 (1980); <u>see also</u> <u>Freund v. Nycomed Amersham</u>, 347 F.3d 752, 758 (9th

9    Cir. 2003).  The public policy implicated must be "(1) delineated in either constitutional or

10    statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than

11    serving merely the interests of the individual; (3) well established at the time of discharge; and (4)

12    substantial and fundamental."  <u>Freund</u>, 347 F.3d at 758 (quoting <u>City of Moorpark v. Superior</u>

13    <u>Court</u>, 18 Cal.4th 1143, 1159 (1998)).  Where a plaintiff adequately pleads a FEHA claim for

14    discrimination, the derivative claim for wrongful termination in violation of public policy

15    survives.  <u>Ayala v. Frito Lay, Inc.</u>, 263 F. Supp. 3d 891, 913 (E.D. Cal. 2017).  The motion to

16    dismiss is DENIED as to this claim.

17        G.    <u>Punitive Damages</u>

18        Defendant moves to strike plaintiff's prayer for punitive damages under California law, on

19    grounds that a corporate entity employer cannot be liable for punitive damages unless an officer,

20    director, or managing agent of the corporation was personally guilty of oppression, fraud, or

21    malice.  ECF No. 17-1 at 17-18; Cal. Civ. Code § 3294(a).  "The law does not impute every

22    employee's malice, fraud, or oppression to a corporation.  Instead, punitive damages require proof

23    of ratification of such an act among corporate leaders, who are the corporation's officers,

24    directors, or managing agents."  <u>Achal v. Gate Gourmet, Inc.</u>, 114 F. Supp. 3d 781, 817 (N.D.

25    Cal. 2015).  Plaintiff asserts he has adequately pled a claim for punitive damages because

26    "Defendant knew that Plaintiff was having stomach-removal surgery, Defendant knew that

27    Plaintiff had to undergo post-surgery chemotherapy treatment and had to recover.  Despite this

28    knowledge, Defendant intentionally terminated Plaintiff's employment."  ECF No. 18 at 15.

1  Plaintiff contends these "facts allege oppression and malice, and therefore Defendant's motion to

2  strike should be denied." Id.

3        The court agrees with defendant that plaintiff has not adequately alleged facts to support

4  punitive damages.  Plaintiff's argument implies that anyone who states a FEHA discrimination

5  claim is also able to support a prayer for punitive damages.  It is clear from the existence of

6  limiting language in FEHA itself that this is not the intention of the statute.  The motion to strike

7  the punitive damages claim is GRANTED.

8                              **III.  Leave to Amend**

9        Plaintiff requests leave to amend in the event any of his claims are dismissed.  ECF No. 18

10  at 16.  Ordinarily, when a motion to dismiss is granted, "[the] district court should grant leave to

11  amend even if no request to amend the pleading was made ...." Henry A. v. Willden, 678 F.3d

12  991, 1005 (9th Cir.2012).  "However, leave to amend need not be granted if amendment would be

13  futile or if the plaintiff has failed to cure deficiencies despite repeated opportunities." Coppola v.

14  Smith, 982 F. Supp. 2d 1133, 1136-37 (E.D. Cal. 2013) (citing Mueller v. Aulker, 700 F.3d 1180,

15  1191 (9th Cir. 2012); Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010)).  Here,

16  dismissal is limited to plaintiff's FEHA retaliation claim and his prayer for punitive damages.

17  The facts of this case are relatively straightforward, and from a careful review of the facts alleged,

18  as well as plaintiff's argument both on the papers and at the hearing, it is readily apparent that

19  leave to amend on these two points would be futile.  Accordingly, the request for leave to amend

20  is denied.

21                              **IV.  Conclusion**

22        For the reasons set forth above, defendant's motion to dismiss (ECF No. 17) is

23  GRANTED IN PART AND DENIED IN PART as follows:

24     1.  GRANTED as to

25            a.  Plaintiff's Fifth Cause of Action for retaliation in violation of FEHA, and

26            b.  Plaintiff's prayer for punitive damages; and

27  ////

28  ////

1       2.  Otherwise DENIED.

2    DATED: March 19, 2025

3

4    ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28